*Turner* for appellant: *Owsley & Goodloe and Caperton* for appellees.

EJECTMENT.

## Allen & Gardner *vs* Summers & Waggener.

ERROR TO THE HART CIRCUIT.

Case 132.

*Equity jurisdiction. Non-residents lands. Debts.*

May 27.

CHIEF JUSTICE EWING delivered the opinion of the Court.

The case stated.

THIS is an action of ejectment prosecuted by Allen & Gardner, as lessors, against Summers & Waggener. To make out title, the plaintiffs read to the jury a patent from the Commonwealth of Virginia, for 3000 acres of land, issued to Abraham Nelson, in 1792, and also read the record of a proceeding in Chancery, prosecuted in 1826, in the names of Philip Phillips' heirs, against the *unknown heirs* of Abraham Nelson, by which they claimed as due and owing to them, fifty pounds, payable in October, 1786, and fifty-two pounds ten shillings, payable in October, 1787, by virtue of a bond executed by said Nelson in New Jersey, in 1784, to one Barton, and assigned by Barton to their ancestor, and obtained a decree for the same in August, 1826, and an order directing the said land to be sold, and appointing a Commissioner to make the sale, in satisfaction of the decree. They also read the deed of the Commissioner to William Allen, one of the lessors, by which it appears that he purchased the whole tract at $15, and a conveyance was made to him. They also proved that the defendants were in possession of the land on the day of the service of notice. The lessors also proved by Mrs. Rathbone, that upwards

of forty years ago she knew a man by the name of Abraham Nelson; that he lived at her house in Hardin; that he came from Pennsylvania; he had no family, chidren or connexions that she ever heard of; he left her house for Pennsylvania, leaving his papers, and expecting to return; that he never returned, nor did any person ever apply for his papers, and she heard that he had been blown up with powder and killed forty years ago. This being all the evidence, the counsel for the defendants moved the Court to instruct the jury to find as in case of a non-suit, on the ground that the proceedings in Chancery were void, and the conveyance to Allen passed no title. The instruction was given, and the verdict accordingly found for the defendants, and the lessors of the plaintiff have brought the case up to this Court for revision.

If Abraham Nelson, who resided at Mrs. Rathbone's, was the obligor in the bond set up, and also the owner of the land in contest, neither of which facts appears; if he had no heirs, then there were no parties to the suit, actually or constructively, nor could any title pass by the Commissioner's deed, which purports to convey the *title* of the *heirs* only, and could convey no more. If the presumption could be indulged, that the aforesaid Abraham Nelson was the obligor in the bond, and also the owner of the land in question, and that the title remained with him at his death, and was not aliened or devised, the presumption can scarcely be indulged against the proof in the cause, made by the lessors own witness, that he left heirs, and if such presumption could not be indulged, then was the instruction proper, as the lessors, whose province it was to make out title in themselves, had failed to do so.

But, waiving this difficulty, we would remark, that prior to the statute of 1827, which was before the decree referred to was obtained, there was no statutory regulation authorizing a proceeding in Chancery against non-resident debtors, to subject their lands in this State to sale for the satisfaction of their debts. And it may be questioned whether that statute should be construed as so connecting itself with former statutes, authorizing proceedings against unknown heirs, as to authorize a pro-

ALLEN &c.
*vs*
SUMMERS &c.

Before the statute of 1827, there existed no statutory regulation authorizing a proceeding against non-resident defendants for subjecting their lands in this State to the satisfaction of their debts.

ceeding against them for the object provided for.   Be this as it may, if it were conceded that prior to and independent of the statute of 1827, a Court of equity might have taken jurisdiction, upon the ground of a failure of legal remedy, to subject the lands of a non-resident, lying in this State, to sale for the payment of his debts; and that jurisdiction might have been extended so far as to subject the lands of unknown heirs to the payment of the debts of their ancestor, such jurisdiction could not have been taken or exerted, to subject the lands of either to sale in satisfaction of a debt for which they were not made liable by the then existing laws—the jurisdiction could be exerted only to supply the defects of legal remedy.   And if at law, lands were not liable to be sold in satisfaction of the debt, in case there were no impediment to the obtention of judgment at law, neither could a Court of Equity take jurisdiction to subject them.

By a careful examination of the statutes in force at the time of the decree in question was obtained, we are satisfied that lands were not liable to be sold in satisfaction of debts contracted prior to the 17th day of December, 1792, and of course from what has been remarked, they were not liable to be sold in satisfaction of such debts by a proceeding in Chancery, either against non-resident defendants or unknown heirs.   As the debts for which the decree was obtained were contracted prior to the aforesaid time, it follows that the whole proceeding was without justification or authority, and consequently void.

The judgment of the Circuit Court is therefore affirmed, with costs.

*Harlan & Craddock and Monroe* for plaintiffs.

Lands, prior to 17th December, 1792, were not subject to sale under execution for debt, nor wer ethey, after the statute of 1827, subject to sale under the decree of the Chancellor (against non-residents) for debts contracted before 17th Dec. 1792.